# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 7401 | **DATE** | 6/3/2002 |
| **CASE TITLE** | Gerlib vs. R.R. Donnelley & Sons | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion in limine (289) is granted in part; defendant's motions in limine (276, 272, 273, 269, 267), are granted; and defendant's motions in limine to exclude evidence (271, 270, 268, 275, 274, 277) are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUN 0 5 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 298 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| OR6 | courtroom deputy's initials | 02 JUN -4 PM 4:31 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RONALD GERLIB, et al., )
)
    Plaintiffs, )
)
vs. ) Case No. 95 C 7401
)
R.R. DONNELLEY & SONS )
COMPANY, et al., )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The purpose of this Memorandum Opinion and Order is to rule on the parties' motions *in limine*.

### A. Plaintiff's Motions *in Limine*

The plaintiffs first seek to exclude evidence and arguments concerning Fred Mayer's age, the ages of those who received the "Mayer memo," and the ages of other Donnelley employees who were involved in making employment decisions. The plaintiffs argue that the ages of these individuals are irrelevant. The motion is denied. Though the Seventh Circuit has said that the ages of the decision makers are "relatively unimportant," *see Kadas v. MCI*, 255 F.3d 359, 361 (7th Cir. 2001), that is not the same thing as irrelevant. The information is not tremendously probative, but it is relevant that the decision maker is a member of the protected class. Nor is the evidence unfairly prejudicial; to the extent any of the decision makers is taking the stand – and Donnelley has indicated that it intends to call several of them, including Mayer – the jury would have an opportunity to assess, or at least approximate, their ages even if the witnesses were not

allowed to tell them. Accordingly, the Court will not preclude Donnelley from eliciting the ages of the individuals who testify. But Donnelley will not be permitted to argue that any inference of nondiscrimination arises simply because the terminating employees were the same age or older than the terminated employees. *Kadas*, 255 F.3d at 361.

Next, the plaintiffs seek to limit Donnelley to a single statistical expert witness; they argue that Donnelley should be permitted to call either Dr. McCollister or Dr. Bronnar, but not both. Donnelley has indicated that it has no intention of calling both witnesses, and the motion is therefore granted as unopposed.

The plaintiffs next argue that Donnelley should be sanctioned for failing to comply with the Court's order of August 1999 directing it to provide certain employment information; they ask that the jury be instructed that Donnelley's inability to provide data showing the division and/or job title of more than 4,000 employees hired in 1993 and 1994 means that the missing information would have shown additional positions for which the plaintiffs were qualified and would have applied, and for which younger employees were hired. Donnelley has filed a motion *in limine* concerning the same issues and evidence, so we address both motions together below.

### B.  Donnelley's Motions *in Limine*

At the outset, the Court notes that Donnelley's strategy with respect to its motions *in limine* seems to be to attack each piece of evidence separately and to argue that each piece should be excluded because it is not enough by itself to prove discrimination. This misunderstands the nature of a case based on circumstantial evidence. It is entirely appropriate for the plaintiffs to try to prove their claims by producing bits of circumstantial evidence that, though arguably benign or ambiguous in a vacuum, may when combined with other similar pieces of evidence

2

give rise to an inference of intentional discrimination. *See, e.g., Troupe v. May Department Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994); *Partington v. Broyhill Furniture Industries, Inc.*, 999 F.2d 269, 271-72 (7th Cir. 1993). *See also Ekanem v. Health & Hospital Corp. of Marion County, Indiana*, 724 F.2d 563, 575 (7th Cir. 1983) ("The 'pattern or practice' theory of proof set forth in [*International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977)] and its progeny affords plaintiffs wide latitude in attempting to establish circumstantial evidence of unlawful intent."); *Futrell v. J.I. Case*, 38 F.3d 342, 350 (7th Cir. 1994) ("[w]hen a plaintiff uses the indirect method of proof, no one piece of evidence need support a finding of age discrimination . . . .") (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 20 (7th Cir. 1987)). With this in mind, the Court considers each of Donnelley's motions.

### 1. Data not contained in data base produced by Donnelley

Donnelley first moves to exclude evidence pertaining to data not contained in the database produced to the plaintiffs. As noted above, this motion addresses the same issues raised in plaintiffs' motion *in limine* seeking a jury instruction concerning the inference to be drawn from Donnelley's failure to provide or maintain all of the information relevant to the database. Initially, the Court agrees with the plaintiffs that if Donnelley had purposely withheld relevant information, the plaintiffs might be entitled to an adverse inference instruction. *See, e.g., Miksis v. Howard,* 106 F.3d 754, 763 (7th Cir. 1997). But the plaintiffs have not demonstrated that Donnelley did this. The best they have is an argument that Donnelley did not look hard enough to find what the plaintiffs had requested; they have not shown that looking harder would have yielded anything further. On these facts, the Court sees no basis to instruct the jury concerning what inferences it should or should not draw from the database information or the lack thereof.

Moreover, plaintiffs' evidence suggesting that Donnelley did not look hard enough is equivocal at best and not particularly probative of anything, and admission of the evidence would lead to a lengthy side-tracking of an already complicated case, creating a significant possibility of jury confusion and the certainty of a waste of time. The parties may introduce evidence regarding the completeness or incompleteness of the database provided by Donnelley, and they may make arguments concerning how that affects the analysis of what the database shows. But the plaintiffs may not introduce evidence concerning the steps Donnelley took or did not take to produce the information requested by the plaintiffs and ordered by the Court.

2. **Evidence concerning job clearinghouse**

Donnelley next seeks to exclude two lines of evidence relating to the job clearinghouse Donnelley set up to assist CMD employees in finding other positions within the company. The plaintiffs have suggested that they will offer evidence that Donnelley failed to post *all* job openings through the clearinghouse and failed to inform CMD employees about the clearinghouse, and will argue that this supports their claim of age discrimination. Specifically, the plaintiffs contend Donnelley used these tactics to steer open jobs to younger applicants and away from the older CMD employees. Donnelley seeks to exclude this evidence on relevance grounds; it also argues that the evidence is unfairly prejudicial and should therefore be excluded under Rule 403.

In ruling on the parties' summary judgment motions, the Court concluded that the plaintiffs were entitled to bring to a jury the claim that Donnelley designed and implemented its workforce reduction programs, including the job clearinghouse, to work to the disadvantage of employees who were over the age of forty. *Gerlib v. R. R. Donnelley*, No. 95 C 7401, 2001 WL

4

1313794, at *14 (N.D. Ill. Oct. 26, 2001). The fact that Donnelley did not post certain positions or did not make employees aware of the clearinghouse – which is what Donnelley allegedly said it was going to do – is relevant, especially when combined with the plaintiffs' statistical evidence. *Id.* at *12-14. The Court also notes, though it is not necessary to our decision on the motion *in limine*, that this evidence would also be relevant to rebut Donnelley's claim that it took great pains, including setting up the clearinghouse, to ensure that CMD employees could find other positions within the company – which is a tack Donnelley has indicated it will take.

It is true that Donnelley was under no obligation to create the clearinghouse or to do anything to help the laid-off employees find new positions. *See, e.g., Smith v. Cook County*, 74 F.3d 829, 833 (7th Cir. 1996); *Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir. 1995). But having undertaken this task, Donnelley was obligated to operate the clearinghouse in a non-discriminatory manner. *Taylor*, 69 F.3d at 780. The basis of our decision to admit evidence about the clearinghouse is not that the plaintiffs should be able to second-guess before a jury Donnelley's business practices; rather this evidence is admissible because it is part of the web of circumstantial evidence that could lead a reasonable jury to find in favor of the plaintiffs, as the Court held in its summary judgment ruling. Donnelley's motions concerning the clearinghouse are denied.

### 3. Documents with attached post-it notes identifying employees' ages

Donnelley next seeks to exclude evidence pertaining to documents that contain attached "post-it" notes identifying the age and race of certain employees. This evidence unquestionably would be relevant and admissible if the plaintiffs could establish that the notes were placed on the documents at some point during the period in which the challenged decisions were made.

5

But the only evidence about when the notes were made or attached is the unrebutted affidavit of Walter Hannan, who was Donnelley's human resources manager in 1995 and who stated that the notes were put there, at his direction, in 1995 – i.e., after the relevant time – in connection with the company's response to an EEOC charge. Accordingly, the Court has no basis to conclude that the post-it notes were relevant with regard to the termination and transfer decisions challenged in this case. Donnelley's motion to exclude evidence concerning the notes is granted.

4. **Evidence regarding requests for employees' school graduation dates**

Donnelley also seeks to exclude evidence concerning the company's request for school graduation dates on the forms employees completed and submitted to the clearinghouse; it contends that those requests are not indicative of discriminatory intent. The motion is denied. Donnelley cites *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir. 1997), to support its motion. But that case suggests only that asking for birth dates -- and high school graduation dates, which is what Donnelley's forms requested, are a pretty good indicator of birth dates – "cannot *without more* be thought evidence of age discrimination." *Id.* at 941 (emphasis added). Such evidence may, however, form part of a broader circumstantial evidence puzzle that, viewed as a whole, may be enough to prove discrimination. *See, e.g., Partington*, 999 F.2d at 271-72. Donnelley is free to argue that the graduation dates had nothing to do with age discrimination and that its reasons for requesting this information were benign.

5. **Evidence regarding prior workforce reduction practices**

Donnelley next seeks to exclude certain evidence regarding its prior workforce reduction policies and procedures. Evidence concerning what the company's policies and procedures were, as well as evidence about how they were implemented, is not only relevant, but crucial to

6

plaintiffs' claim. And prior practices of discrimination are unquestionably relevant to a pattern and practice claim. *See, e.g., International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977), *quoted in Adams*, 231 F.3d at 422 (To win on their pattern and practice claim, the plaintiffs must show that age discrimination was "the company's standard operating procedure – the regular rather than the unusual practice."). *Cf. McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973) (evidence concerning the defendant's employment policy and practice may be helpful to a determination of whether a particular employment decision "conformed to a general pattern of discrimination").

With respect to certain specific policies and procedures, Donnelley first argues that the plaintiffs should be precluded from introducing on relevance grounds any evidence concerning changes in the company's bumping or transfer policies. But if Donnelley, in shutting down the CMD, deviated from its prior established seniority practices – and bumping is a seniority practice – that fact is relevant. *See Ayala v. Mayfair Molded Products Corp.*, 831 F.2d 1314, 1320 (7th Cir. 1987) (changes in established seniority practices may constitute evidence of discrimination), *abrogated on other grounds by King v. General Electric Co.*, 960 F.2d 617 (7th Cir. 1992); *Smith*, 74 F.3d at 833.

Donnelley also argues that the plaintiffs should be precluded from introducing evidence and arguments about its other workforce reductions and specifically the use of retirement incentives and lists showing employees' ages. With respect to the latter, although they may not, by themselves, be enough to prove discrimination, as part of the larger circumstantial evidence picture, the lists are admissible. *See Futrell*, 38 F.3d at 350 ("[w]hen a plaintiff uses the indirect method of proof, no one piece of evidence need support a finding of age discrimination . . . .")

7

(quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 20 (7th Cir. 1987)). With respect to the former, Donnelley has a point; the Court is unable to see how offering a benefit to older employees and not to younger employees could constitute any evidence – circumstantial or otherwise – of discrimination. *See Henn v. National Geographic Society*, 819 F.2d 824, 826-27 (7th Cir. 1987). And the plaintiffs have offered nothing in response to Donnelley's argument that this evidence should be excluded. The plaintiffs are therefore precluded from introducing evidence concerning any early retirement incentives offered in connection with its other workforce reductions.

Finally on this score, Donnelley seeks to exclude evidence of comments such as "retire?" and "will hopefully retire" written next to certain employees' names on various documents. These comments go beyond the early retirement incentives; they arguably suggest that certain employees may have been singled out for elimination – voluntary or otherwise – because of their age. As such, they fall into the web of admissible circumstantial evidence we have described several times in this opinion. In sum, with the exception of the early retirement incentives, Donnelley's motion to exclude evidence regarding workforce reduction policies is denied.

### 6. Evidence regarding allegedly coerced retirements

Donnelley next seeks to exclude evidence pertaining to its alleged coercion of older employees to retire before the CMD shutdown. Other than addressing the "retire?" and "will hopefully retire" notes just discussed (which we have held are admissible for reasons independent of any coercion theory), the plaintiffs have not responded to this motion. They have not, for example, pointed to any evidence of coercion. Accordingly, Donnelley's motion on this issue is granted.

8

### 7. Evidence regarding contingency account and decision to charge retirees for medical benefits

Donnelley also seeks to exclude evidence relating to an alleged shutdown contingency account and evidence pertaining to its decision to charge CMD retirees for the costs of their medical benefits. The plaintiffs have not explained why either of these pieces of evidence is relevant; they have not, for example, described any evidence that could link the contingency fund to the age discrimination claims. Nor have they explained how Donnelley's decision to make retired employees pay for medical benefits previously provided for free supports the discrimination claims. This latter evidence potentially could become admissible if Donnelley opens the door by, for example, offering evidence that it offered the retirees free medical benefits to ameliorate the effects of their separation from the company. But unless and until Donnelley opens that door, the evidence is excluded. With this limited exception, Donnelley's motions to exclude evidence about the shutdown contingency account and the decision to charge for medical benefits are granted.

### 8. Evidence concerning retention of intermittent employees

Lastly, Donnelley seeks to exclude on relevance grounds evidence regarding the retention of intermittent employees. The plaintiffs have responded that Donnelley's policy with respect to intermittent employees, like its other work force reduction and transfer policies, favored younger employees to the detriment of older employees and is therefore relevant to the discrimination claims. The Court agrees. Intermittent employees, who are not part of the plaintiff class partly because they are claimed to have taken jobs that should have gone to the plaintiffs, tended to be younger than permanent employees. Thus, evidence that intermittent employees were used to

9

perform jobs or functions previously done by the class members would tend to support the plaintiffs' discrimination claims. Additionally, the plaintiffs have claimed that Donnelley's use of intermittents to fill open positions was a departure from its prior policy, which may also support a discrimination claim. *See Ayala*, 831 F.2d at 1320. Donnelley argues that it had no duty to give special treatment to its older workers, and that is certainly true. *See Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1217 (7th Cir. 1985) ("[t]he ADEA mandates that an employer reach employment decisions without regard to age, but it does not place an affirmative duty upon an employer to accord special treatment to members of the protected age group.") (quoting *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir. 1981)). But that does not make irrelevant evidence regarding its alleged departure from established practices in a way that disfavored older employees. *Smith*, 74 F.3d at 833. Evidence that Donnelley had represented that permanent, not temporary employees would be used to fill open positions is likewise relevant because it tends to support the existence of a prior practice. Such evidence is not admissible to prove breach of promise or breach of contract, however, as no such claim is made in this case. The Court will consider giving the jury a limiting instruction regarding the proper consideration of this evidence if requested by Donnelley.

## C. Donnelley's Motion to Bar the Testimony of Dr. Christopher Ross

Donnelley has moved to bar the testimony of plaintiffs' statistical expert, Dr. Christopher O. Ross, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under *Daubert*, scientific testimony is admissible only if two requirements are met: first, the expert offering the testimony must have "genuine expertise" or "scientific knowledge," and, second, that expertise must assist the trier of fact to understand or

10

determine a fact in issue. *Daubert*, 509 U.S. at 592. In other words, to be admissible, the expert testimony must be both reliable and relevant. The *Daubert* inquiry is "a flexible one," *id.* at 594, that "neither necessarily nor exclusively applies to all experts in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). It is designed to ensure "that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

Donnelley first argues that Ross's report is unreliable because he based his standard deviation analysis concerning employee transfers on the entire CMD employee population, rather than comparing those who received positions through the clearinghouse with those who actually applied for positions through the clearinghouse. Donnelley makes the same argument with respect to the regression analysis in Ross' report. Although Donnelley's arguments make sense as a general proposition, they fail to take into account the various problems the plaintiffs have alleged with respect to the design, implementation and operation of the clearinghouse. Donnelley's arguments assume that employees who failed to apply for positions through the clearinghouse were not interested in those positions for reasons totally unrelated to age. But if, as the plaintiffs allege, Donnelley failed to inform all CMD employees about the clearinghouse, interest would not necessarily have anything to do with the employees' decisions, and Donnelley's proposed statistical model would be as meaningless as Donnelley claims Ross' to be. Ross' statistical analysis would seem to account for the alleged defects and is therefore sufficiently reliable on this score to satisfy *Daubert*. As we said in our summary judgment decision, Donnelley is free to cross examine Ross on his failure to consider "interest" in reaching

his conclusions.

Donnelley next argues that Ross should be barred from presenting his standard deviation analyses because they cannot show, as he claims they do, that termination and retention rates were due to age. Donnelley argues that because the selection rates calculated by Ross may be explained by some factor other than age, they are irrelevant. Donnelley cites *Adams v. Ameritech Services, Inc.*, 231 F.3d 414 (7th Cir. 2000), to support that proposition, but we do not read the case to say any such thing. On the contrary, after recognizing that the statistical analyses offered there were enough only to rule out chance and that the real reason for decisions may have been something other than age, the court in *Adams* nonetheless held that the expert's statistical evidence was admissible. *Id.* at 427 ("[r]uling out chance was an important step in the plaintiffs' proof, even if it was not a single leap from the starting line to the finish line."). The same is true here. The question before us "is not whether [Ross' report] prove[s] the entire case; it is whether [the report was] prepared in a reliable and statistically sound way . . . ." *Id.* at 425. We find that Ross' report passes this test.

Donnelley next argues that Ross' regression analysis should be rejected because it employs the wrong statistical model, the "ordinary least squares" model, which according to Donnelley improperly assumes that the effect of submitting *any* application is the same as submitting two, three or more. In his report Ross specifically explains how he took applications into account and what effect he assumes them to have. *See* Report, p. 4. The fact that Ross did not conduct his analysis in the same way as Donnelley's expert does not make Ross' testimony inadmissible. Donnelley may cross examine Ross on the weaknesses it alleges exist in his regression analysis model and may argue the point to the jury.

12

Donnelley also argues that Ross' regression analysis is fatally defective because it does not take into account other relevant factors which would have an impact on a CMD employee's decision to seek or accept a transfer. Donnelley argues that consistent with *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir. 1997), we should bar Ross from testifying because of his failure to consider these other relevant factors. We disagree. In *Sheehan*, the court held that the plaintiff's statistical expert had failed "to exercise the degree of care that a statistician would use in his scientific work outside of the context of litigation" because he had arbitrarily omitted certain people from his testing sample and because he failed to consider that anything other than age could have contributed to the company's employment decisions. *Id.* at 942. That is not the case here. Ross may not have considered all of the factors that Donnelley thinks he should have considered, but he unquestionably considered factors other than age (he looked at performance ratings, transfer applications, similarity of positions), and he also noted certain "data issues" and explained how they might affect the integrity of his analysis. As we explained in connection with the standard deviation analysis, this failure may cause a trier of fact to give less weight to Ross' testimony, but it does not make the report inadmissible. *See Adams*, 231 F.3d at 423 ("[n]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility.") (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986)).

Donnelley argues that the fourth section of Ross' report, in which he concludes that only a small percentage of the jobs Donnelley filled during 1993 and 1994 were posted to the job clearinghouse, should be excluded because it is irrelevant. The Court disagrees. When combined with the plaintiffs' other evidence that the CMD population was substantially older than the employee population at other divisions, this conclusion is relevant to the plaintiffs'

13

claim that Donnelley operated the clearinghouse in a manner that favored younger employees. Donnelley also argues that Ross' conclusion on this issue is unreliable because he used only job titles to determine whether a job filled was similar to a job posted, because the data was actually compiled by someone else, and because he developed one of the factors that went into his analysis based solely on his "gut." Though each of these issues may affect Ross' credibility with a trier of fact, none convinces the Court that his testimony on this issue is unreliable. With respect to the job titles, the Court has no reason to think that the general descriptions given to a particular job would necessarily vary, or would vary materially, from division to division. With respect to the other issues, it is certainly true that Ross did not compile the underlying data himself in concluding that not all jobs were posted. In fact, "someone in the office" used Donnelley's information and database to compile a list of positions filled in 1993 and 1994 and then reviewed the clearinghouse postings to see which of those jobs had been posted; to accomplish this she looked at job titles, location, and the time of the posting (i.e., if a posting for a position with the same job title and division appeared within the six-week or two month period prior to the hire, Ross considered it to have been posted). *See* Ross Deposition, pp. 116-18. The fact that Ross may not have looked at the underlying information himself is not terribly troubling; it is common in academia and the scientific community, as it is in the practice of law, to have data compiled by someone other than the person who is analyzing it. And the comparison of the two lists (positions filled and positions posted) would hardly require a degree in statistics. If the compilation is flawed, this will no doubt provide a fruitful avenue for cross-examination, but it is not a basis to excise this topic from Ross' testimony. Nor does the fact that Ross did not have a scientific reason for selecting six weeks or two months prior to filling the job

14

as the relevant window for looking for postings render his conclusions unreliable. Though Ross based his choice of six weeks on his "gut," the period of time he chose is not so unreasonable as to make his analysis unreliable or unhelpful. Any window would have had the potential to exclude some postings. Again, Donnelley is of course free to exploit these issues before a jury. The same is true of Donnelley's claim that Ross looked at all of 1993 and 1994 even though the clearinghouse did not operate during that entire time.

Donnelley next challenges Ross' conclusion, in section five of his report, that Donnelley hired roughly 3,000 people into jobs similar to those being vacated by CMD employees and that the mean age for those 3,000 hirees was 28.13, which was statistically significantly less than the mean age for those people who opted in to this lawsuit. Initially, we agree with Donnelley that Ross' ultimate comparison may not be particularly apt or even helpful – it is hardly surprising, given that this is an age discrimination case, that the plaintiffs and class members are older than the general employee population. But the Court has no reason to doubt the reliability of the first part of Ross' comparison, i.e., that the median age of the new hires was 28.13, and he may so testify. As explained above, contrary to Donnelley's assertion, the fact that Ross used job titles to gauge job similarity is neither unreasonable nor problematic.

Donnelley next argues that Ross' analysis about separation reports should excluded because it is irrelevant and because it involves no expert analysis. The evidence would be relevant, for example, to rebut any assertion by Donnelley that CMD employees may not have been selected for transfers to other positions because they were bad employees. Additionally, Ross poured over and organized the data Donnelley provided to reach his conclusions concerning the employees' ratings, and we see no reason to exclude his analysis simply because it may not

15

have involved complex mathematical calculations.

Finally, Donnelley seeks to exclude Ross' conclusions concerning Arthur Brickse because Ross never actually spoke to Brickse and because Ross suggests that Brickse should have been considered for certain positions even though he had no basis to believe that Brickse was qualified or interested in them. As to the former, Ross based his conclusions on information he received from Karen Bass, an employee in plaintiffs' counsel's office, which in turn was based on conversations with Brickse. Additionally, Brickse gave a deposition and submitted an affidavit in connection with the parties' summary judgment motions, though it is not clear that Ross was specifically given information from these latter sources. The fact that Ross' information about Brickse came from someone working with the attorney representing Brickse does not make the information unreliable. And the fact that Ross never bothered to check whether Brickse was really qualified to do the jobs Ross says he could have done, or whether Brickse was actually interested in taking a position in Los Angeles or New York, goes to the weight to be given Ross' conclusions, not their admissibility. Though plaintiffs will be required to establish a foundation for this part of the analysis – for example via Brickse's testimony at trial – Ross' findings in this regard are not inadmissible.

**Conclusion**

As more fully explained above, plaintiff's motion *in limine* [289-1] is granted in part and denied in part; defendant's motions *in limine* to exclude evidence pertaining to data not included in the database [276-1], to exclude evidence pertaining to documents with attached notes [272-1], to exclude evidence pertaining to alleged coercion of employees [273-1], to exclude evidence pertaining to an alleged shutdown contingency account [269-1], and to exclude evidence

pertaining to the decision to charge retirees for medical benefits [267-1] are granted; and defendant's motions *in limine* to exclude evidence regarding requests for graduation dates [271-1], to exclude evidence regarding workforce reduction policies [270-1], to exclude evidence regarding retention of intermittent employees [268-1], to exclude evidence regarding failure to post job openings [275-1], to exclude evidence concerning plaintiffs' failure to be informed of the clearinghouse [274-1], and to bar the testimony of plaintiffs' expert [277-1] are denied.

Dated: June 3, 2002

/s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge