Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 C 7401 | **DATE** | 6/11/2002 |
| **CASE TITLE** | Gerlib vs. R.R. Donnelley & Sons | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants in part, Donnelley's renewed motion for summary judgment on Count I. Additionally, the Court grants the plaintiffs' renewed motion for summary judgment on Count I as to their claims that employees who retired in 1993 and satisfied that Rule of 75 are entitled to enhanced retirement benefits and that employees who retired in 1994 from surplus occupations are entitled to enhanced retirement benefits, but otherwise denies that motion.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 17 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 301 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD GERLIB, et al., )
)
Plaintiffs, )
)
vs. ) Case No. 95 C 7401
)
R.R. DONNELLEY & SONS )
COMPANY, et al., )
)
Defendants. )

DOCKETED
JUN 17 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On December 18, 1995, the plaintiffs filed a class action age discrimination complaint against R. R. Donnelley & Sons. On October 26, 2001, the Court issued a memorandum opinion and order resolving the parties' cross motions for summary judgment. As part of that ruling, the Court stayed proceedings in connection with Count 1 of the complaint to allow the plaintiffs time to exhaust the administrative remedies available to them under Donnelley's Retirement Benefit Plan (RBP). *See Gerlib v. R. R. Donnelley & Sons*, No. 95-7401, 2001 WL 1313794, at *8 (N.D. Ill. Oct. 26, 2001). Count 1, as construed by the Court, alleges that under Donnelley's 1989 Retirement Benefit Plan, as amended in 1994 retroactive to 1989, (1) CMD employees terminated in 1993 who met the "Rule of 75" are entitled to enhanced retirement benefits, (2) employees from "surplus occupations" terminated in 1994 are entitled to enhanced retirement benefits, and (3) employees who received benefits under the SPP are entitled to enhanced retirement benefits under the RBP as well. *See id.* at *5. The plaintiffs submitted these claims to Donnelley on November 9, 2001, and on December 6, 2001 Jack McEnery, Donnelley's vice

president of compensation and benefits, who was acting as claim administrator under Section 10.2 of the RBP, denied all three. The plaintiffs appealed McEnery's decision to the Administrative Trustees of Donnelley's RBP, who denied the appeal on January 31, 2002. The parties have now renewed their motions for summary judgment with respect to these claims.

A.     Standard of Review

Initially, we must consider whether the administrator's decisions on the plaintiffs' claims are to be reviewed *de novo* or under the arbitrary and capricious standard. In our October 26 summary judgment ruling, we found that the language of the RBP did not confer the level of discretion necessary, under *Herzberger v. Standard Insurance Co.*, 205 F.3d 327 (7th Cir. 2000), to take claims out of the default plenary form of review. *Gerlib*, 2001 WL 1313794, at *6-7. In its renewed motion, Donnelley argues that despite this ruling, we should nonetheless apply an arbitrary and capricious standard of review because of an amendment to the RBP that was adopted on March 31, 1999 and made effective February 9, 1999. Donnelley argues that this amendment, Amendment Number Six, applies to the plaintiffs' current administrative claims because they were not filed until November 9, 2001, whereas the claims before the Court initially on summary judgment were all filed prior to the time Amendment Six took effect. The plaintiffs do not dispute that Amendment Number Six confers the level of discretion necessary to take claims out of the default plenary form of review. And the Court agrees with Donnelley that the language of the amendment differs materially from the language of the RBP that was before us on summary judgment.

In concluding that claims under the RBP were subject to *de novo* review, we found it significant that the RBP contained no "'final and binding'-type language"; the plan simply gave

the administrator authority to make decisions regarding who gets benefits and when, without suggesting that those determinations are insulated from review. *Gerlib*, 2001 WL 1313794, at *7. In contrast, the language added with Amendment Number Six both gives the administrator the authority to construe the plan and determine claims and advises interested parties that the administrator's decisions in this regard are "final, binding, and conclusive upon an Employer, the Trustee, each Employee, Participant, Spouse and Beneficiary, and every other person or party interested or concerned." Section 10.2(f), (i). Accordingly, we agree with Donnelley that this language limits our review of the administrator's decisions on plaintiffs' claims; we may ask only whether those decisions were arbitrary and capricious.

"Under the arbitrary and capricious standard, a plan administrator's decision should not be overturned as long as (1) 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome,' (2) the decision 'is based on a reasonable explanation of relevant plan documents,' or (3) the administrator 'has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'" *Hess v. Hartford Life & Accident Insurance Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (quoting *Exbom v. Central States Southeast & Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990)). It is not our function, under this standard, to decide whether we would reach the same conclusion as the administrator or even if we would rely on the same authority; we ask only whether the decision was "downright unreasonable." *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294-95 (7th Cir. 1999) (citing *Butler v. Encyclopedia Brittanica, Inc.*, 41 F.3d 285, 291 (7th Cir. 1994); *Cvelbar v. CBI Ill. Inc.*, 106 F.3d 1368, 1379 (7th Cir. 1997); *Mers v. Marriott International Group & Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir. 1998)). But "[i]n some

cases, the plain language or structure of the plan or simple common sense will require the court to pronounce an administrator's determination arbitrary and capricious." *Hess*, 274 F.3d at 461; *see also Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996) ("Sometimes the structure of the plan or sheer common sense or inconsistent interpretations will provide the court with a handle for pronouncing the administrator's determination arbitrary and capricious."). With respect to two of the claims submitted by the plaintiffs, this is such a case.

B.  Consideration of the Administrator's Decisions

1.  Plaintiffs' "Rule of 75" Claim

The administrator first considered the plaintiffs' claim that employees who retired in 1993 and satisfied the "Rule of 75" were entitled to enhanced retirement benefits under the RBP. Donnelley's RBP, as amended in 1994 retroactive to 1989, provides that employees retiring during 1993 were eligible for enhanced early retirement pensions if they were "Employees of the Chicago Manufacturing Division who (i) attain age 55 no later than December 31, 1993, and have at least ten continuous years of service, or (ii) whose age and years of service equal 75 or more." Supplement Number Two to the Retirement Benefit Plan of R.R. Donnelley & Sons Company, ¶5(a) (attached as Exhibit 1A to plaintiffs' appendix). The requirement set out in paragraph (i) is referred to as the "55-and-10" requirement; the requirement set out in paragraph (ii) is known as the "Rule of 75."

Despite this language, which clearly provides that employees who satisfied the Rule of 75 were entitled to retirement benefit enhancements, the administrator denied the claim. He concluded that the Rule of 75 language had been included in the plan as a result of a "drafting error"; despite the language, he found that Donnelley never really intended to make retirement

4

benefit enhancements available to employees who met the Rule of 75 but did not meet the 55-and-10 criteria. Decision on Retirement Plan Benefit Claims in Gerlib v. R.R. Donnelley & Sons, pp. 8-10 (December 6, 2001) (attached as Exhibit 2 to plaintiffs' appendix). Because these findings are contrary to the plain language of the plan, we reverse. *See* 29 U.S.C. §1104(a)(1)(D) (An ERISA plan fiduciary is required to discharge his duties with respect to the plan "in accordance with the documents and instruments governing the plan.").

To deny benefits, the administrator relied on a series of documents and statements: slides shown at meetings conducted with CMD employees; letters to CMD employees in connection with the shutdown; an April 2, 1993 memorandum from Carl Bornholt to Frank Uvena attaching the guidelines (prepared February 24, 1993) that Donnelley was using to award benefits in connection with the shutdown of the CMD; statements apparently made by Bornholt and Uvena (because these statements are not included with the administrator's decision, the Court cannot determine whether they were made around the time of the shutdown or in 2001 when the administrator reviewed plaintiffs' claims); and a statement by the attorney who drafted the plan that she did not know why the Rule of 75 language was included in the plan. We see no proper basis for the administrator to have considered evidence beyond the RBP. *See Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872-73 (7th Cir. 2001) ("ERISA plans are governed by written documents that define their scope"; "if a document governing an ERISA plan is unambiguous, this court will not look beyond its 'four corners' in interpreting its meaning.").

Donnelley could have written its plan such that employees satisfying the Rule of 75 would not be entitled to any retirement benefits other than retiree medical benefits. But it did not do so. The administrator has essentially advocated an after-the-fact re-write of unambiguous

5

plan terms. This was arbitrary and capricious. *See Swaback v. American Information Technologies Corp.*, 103 F.3d 535, 540 (7th Cir. 1996) ("if fiduciaries or administrators of an ERISA plan controvert the plain meaning of a plan, their actions are arbitrary and capricious."); *Filipowicz v. American Stores Benefit Plans Committee*, 56 F.3d 807, 814 (7th Cir. 1995) (ignoring the plain language of a plan to deny benefits is arbitrary and capricious).

Donnelley attempts to justify the administrator's decision by the so-called "scrivener's error" doctrine. Under that doctrine, "the mistake of a scrivener in drafting a document may be reformed based upon parol evidence, provided the evidence is 'clear, precise, convincing and of the most satisfactory character' that a mistake has occurred and that the mistake does not reflect the intent of the parties." *International Union of Electronic, Electric, Salaries, Machine and Furniture Workers, AFL-CIO v. Murata Erie North America, Inc.*, 980 F.2d 889, 907 (3d Cir. 1992). There is no basis to apply the doctrine here. First, in contrast to *Murata*, it is not clear that the challenged provision would have created any kind of "windfall" for the plaintiffs who satisfied the Rule of 75, and the result without the reformation is not in any way "absurd" – certainly not so absurd that we should necessarily believe that no one could ever have intended to write the plan as Donnelley did. *See Union Bank v. Wolas*, 502 U.S. 151, 163 (1991) ("Since there was here no contention of a 'scrivener's error' producing an absurd result, the plain text of the statute should have made this litigation unnecessary and unmaintainable.") (Scalia, J., concurring).

Second, the evidence of the alleged mistake is neither clear, precise, nor convincing. Bornholt's 1993 memo states that the company "didn't plan to 'give away the store' and, hopefully, have not." Attachments to Decision, p. D013042. The retirement guidelines attached

6

to Bornholt's memo provide that CMD employees who satisfied the 55-and-10 requirement "will be eligible for all of the benefits associated with retirement that are provided wholly or in part by our Company" as well as "supplemental retirement benefits based on age and/or years of service . . . ." *Id.* at D013043. The supplemental retirement benefits listed in Bornholt's guidelines are essentially identical to those listed in the letters that went to CMD employees beginning in February 1993. *See Gerlib*, 2001 WL 1313794, at *2. The guidelines also provide that employees who satisfy the Rule of 75 "will be eligible to participate in the Retired Major Medical Program and the Retired Group Life Insurance Program." Attachments to Decision, p. D013045. This section of the guidelines does not delineate the supplemental retirement benefits, and based on that fact, the administrator concluded that these benefits were not available; he concluded that the only benefits available to employees who satisfied the Rule of 75 were the major medical benefits. Decision, p. 10. Significantly, this is not only inconsistent with the RBP, it is inconsistent with Bornholt's guidelines. On the page following the major medical provision, Bornholt's guidelines state, with respect to employees who satisfy the Rule of 75, that "[i]n addition to their eligibility to participate in the Retired Major Medical Program and Retired Group Life Insurance Program, they will be eligible for *all other retirement benefits* including, but not limited to, future improvements in retirement income." Attachments to Decision, p. D013046 (emphasis added). Thus, even if the guidelines could trump the plan documents they simply do not support the administrator's decision.

In addition, although there is a document that states that employees who satisfy the Rule of 75 but have not yet reached retirement age "will be eligible for lifetime Retirees' Major Medical Coverage and Retirees Life Insurance when they reach age 55," Attachments to

7

Decision, p. D013094, that document is labeled as a draft. *Id.* at D013090. And other internal memoranda suggest that employees who met the Rule of 75 were to be treated the same way as employees who met the 55-and-10 requirement. *See, e.g., id.* at D006797 (memorandum from Bob Jewison to Dewey Ingham recommending approval of a plan to offer CMD employees – with no language limiting the plan to employees who satisfied the 55-and-10 requirement – to be entitled to special augmented separation pay or supplemented retirement options).

In sum, the evidence simply does not compel a finding – indeed it does not even suggest – that the Rule of 75 language made it into the plan documents back in 1994 and then stayed until today, surviving other amendments, merely because it was overlooked by the attorneys and managers who no doubt reviewed and dealt with the plan on a constant basis. The administrator's decision on this claim, which is directly contrary to the plan and is unsupported by the scrivener's error doctrine, is in fact "downright unreasonable." We therefore overturn the decision and find that under terms of the RBP, as amended, plaintiffs who retired during 1993 in connection with the CMD shutdown and who satisfied the Rule of 75 are entitled to enhanced retirement benefits.

### 2. Plaintiffs' Claim Regarding Surplus Employees

The administrator next considered the plaintiffs' claim that employees who retired in 1994 from "surplus occupations" were eligible for retirement benefit enhancements even if they had not attained age 55. He concluded that the RBP, when read as a whole, limited the enhancements to those who had reached age 55, regardless of whether they retired from a surplus occupation, and he therefore denied the claim. Decision, p. 11. He denied the claim for the additional reason that the RBP language giving rise to the plaintiffs' claim did not apply to the

8

CMD shutdown. *Id.*

> The RBP language on which the plaintiffs rely provides as follows:
>
> In the case of early retirement offers extended to Employees who retire during 1994 (or who, for bona fide business reasons retire within a reasonable period following the end of 1994):
>
> (a) The Employees eligible for enhanced early retirement pensions shall be those Employees determined by the officers of the company to be in surplus occupations or whose retirement would otherwise be beneficial to the Company.

Construing this language, the administrator determined that the term "surplus" was "a term of art used at the CMD . . . if during work force reductions of ongoing operations, [an employee] was terminated *and* his position was eliminated or, upon termination, he was replaced by another employee whose position was eliminated." Decision, p. 12 (emphasis in original). That construction would have covered the CMD employees whose jobs were eliminated. But the administrator went on to conclude that "the 'surplus' concept, applicable in discrete work force reductions, where operations continue, is inapplicable in a shutdown of a plant, where all operations and positions cease entirely." *Id.* The administrator cited no authority for this rather bold proposition, and we frankly are at a loss to see how he drew the distinction. It finds no support in any document submitted to the Court. As far as we can tell, Donnelley routinely defined "surplus" to include an employee whose position was or would be eliminated – indeed, the administrator recognized as much, *see* Decision, p. 4 – and that is exactly what happened to all of the CMD employees: their positions were unquestionably eliminated when the plant shut down. Glenn Ikeda, the Donnelley manager who wrote the materials spelling out the various supplemental retirement options, testified that "surplus" essentially meant that the employee no longer had a job at Donnelley and that all of the CMD employees were eventually surplus unless

9

they transferred to another Donnelley division. *See* Ikeda Deposition, pp. 131-32. In sum, there is simply no evidence to support the administrator's distinction between a job eliminated in the context of a workforce reduction and a job eliminated in the context of a plant closing. For the administrator to play fast and loose with the so-called "surplus concept" to ascribe to "surplus" a meaning different from the one Donnelley previously had used, without any authority or rational basis for doing so, appears to the Court to be the very definition of "arbitrary and capricious" action. *See Swaback*, 103 F.3d at 540 ("if fiduciaries or administrators of an ERISA plan controvert the plain meaning of a plan, their actions are arbitrary and capricious.").

The administrator also decided that the language dealing with 1994 retirees did not apply to CMD employees because, unlike the language dealing with employees who retired in 1993 (discussed in the previous section of this Opinion), this section of the RBP did not specifically mention CMD employees. That is true. But the 1994 language does not mention *any* divisions, which indicates, contrary to the administrator's findings, that its application is to be read more broadly than the 1993 language, which by its terms applies only to CMD employees. Without evidence to suggest that the 1994 language, contrary to a common-sense reading, was intended to be more restrictive, the administrator's analysis of that language was unreasonable. *See Neuma*, 259 F.3d at 873 (federal common law rules of contract interpretation require courts to interpret ERISA plans "in an ordinary and popular sense as would a person of average intelligence and experience."); *Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Wells*, 213 F.3d 398, 402 (7th Cir. 2000) (ERISA plans, like all contracts, "are enacted against a background of common-sense understandings and legal principles that the parties may not have bothered to incorporate expressly but that operate as default rules to govern in the absence of a clear

expression of the parties' intent that they not govern.").

Similarly, in light of the inclusion of the Rule of 75 language in the RBP, the administrator's decision that the plan, by its terms, limited eligibility for retirement benefits to those employees age 55 and over was also unreasonable. On this last point, we note that the Trustees conceded that Donnelley in fact had offered retirement benefit enhancements to employees less than age 55 in connection with work force reductions in 1994 and therefore did not even rely on this aspect of the administrator's decision to affirm the denial of benefits. *See* Decision by the Administrative Trustees on Retirement Plan Benefit Claims in Gerlib v. R.R. Donnelley & Sons, p. 17 (January 31, 2002) (attached as Exhibit 4 to plaintiffs' appendix).

For these reasons, we reverse the administrator's decision on this claim.

3. Plaintiffs' Claim Regarding Entitlement to Both
   Separation Pay and Enhanced Retirement Benefits

Finally, the administrator considered the plaintiffs' claim that employees who satisfied the 55-and-10 rule and received benefits under the Separation Pay Plan are entitled to enhanced retirement benefits under the RBP as well. The administrator denied the claim based on the fact that these employees were offered a choice of options (three retirement benefit enhancement options and one special augmented separation pay option) in connection with the CMD shutdown and that it was never Donnelley's intention or the employees' understanding that they could, having made an election, get both types of benefits. To the extent the plaintiffs are claiming a right to enhanced benefits under the RBP in addition to special augmented separation pay, we find that this decision is consistent with the language of the RBP, the SPP and the documents distributed to employees in connection with the CMD shutdown. Indeed, were we to consider

11

this claim *de novo*, we would, as indicated by our summary judgment ruling (as clarified on reconsideration), reach the same conclusion. *See Gerlib v. R.R. Donnelley*, Minute Order on the Parties' Various Motions to Amend the October 26, 2001 Opinion (N.D. Ill. Jan. 28, 2002) ("allowing employees who selected options 1, 2 or 3 to collect 'special augmented separation pay' would render meaningless the choice between those options and option 4.").

## Conclusion

For the reasons explained above, the Court grants Donnelley's renewed motion for summary judgment on Count 1 as to the plaintiffs' claim that employees who received special augmented separation pay were also entitled to enhanced retirement benefits, but otherwise denies that motion. Additionally, the Court grants the plaintiffs' renewed motion for summary judgment on Count 1 as to their claims that employees who retired in 1993 and satisfied the Rule of 75 are entitled to enhanced retirement benefits and that employees who retired in 1994 from surplus occupations are entitled to enhanced retirement benefits, but otherwise denies that motion.

Dated: June 11, 2002

MATTHEW F. KENNELLY
United States District Judge